CROWE v. HOUSE OF THE GOOD SHEPHERD.

(Supreme Court, Appellate Division, First Department. February 24, 1899.)

NONSUIT—CONTRADICTORY EVIDENCE.
 The court should not nonsuit because of seeming contradictions of the witness on whom alone plaintiff's case depends, where the testimony is capable of a construction by which the inconsistencies may be reconciled.

Appeal from trial term.

Action by Thomas Crowe against the House of the Good Shepherd. From a judgment dismissing the complaint at the close of plaintiff's case, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Ira Leo Bamberger, for appellant.
Michael J. Horan, for respondent.

PATTERSON, J. This action was brought to recover damages for injuries to the infant plaintiff, upon an allegation that such injuries were caused by the negligence of a driver employed by the defendant, and driving one of its wagons. The plaintiff was nonsuited, and now appeals from the judgment rendered against him.

No specific ground of the motion is mentioned, but from an inquiry of the judge it would appear that the ruling was made because of the failure of proof of negligence chargeable to the defendant. The accident occurred in the highway, on 2d avenue, in the city of New York, between 115th and 116th streets, and south of 116th street. The wagon was marked with the initials "H. G. S.," and was driven by a person in the employment of the defendant as a driver. The point now presented is whether there was any proof that the accident was caused by negligence of the defendant's servant. The wagon was being driven in a southerly direction, and on the wrong side of the avenue for vehicles proceeding towards the south; but it is claimed that there was no evidence to go to the jury concerning the occurrence which connected the defendant with the accident; that it was not shown that the child was run down or run over by the defendant's horse and wagon. The condition of the proof upon that subject was such as to have required the submission of the case to the jury.

The only witness who testified to the fact of the accident was a girl 15 years of age, who swore that she saw the occurrence; that the boy was crossing 2d avenue from the west to the east; that he had almost reached the curbstone on the easterly side when he was run down and injured. She says the horse was going very fast. She testified positively that she saw the contact of the horse with the boy. She says she saw him struck. She says so several times, and yet there is something in the record which, considered separately and without regard to the whole current of the cross-examination, might indicate that she did not see the whole occurrence, as she described it on her direct examination, although in other parts of her cross-examination she positively asserts again that she saw the boy struck, and saw the horse knock him down. The witness was asked by the defendant's counsel when she first saw the boy after he was hurt, to which she answered when he had his head in a bandage, and she brought him home. Then she was asked:

"Q. Where was he when you first saw him hurt? A. Lying right down at our door; right over in the gutter, opposite our door. Q. Where was the wagon then? Had it passed on? A. Yes. Q. How far had it passed on? A. It was about in the middle of the block, between 114th and 115th streets. Q. Had it passed down the block when you saw Tommy? A. Yes. Q. For the first time? A. Yes. Q. Then you went over and picked up Tommy, did you? A. Yes."

Now it would seem to be plain that the witness apprehended those questions as referring to her seeing him for the first time after he had

been struck and the wagon had passed on. She was then asked by the defendant's counsel as to her having seen the wagon actually run over the boy, and she swears distinctly that she did see it. Then come the claimed contradictions:

"Q. You said you didn't see the boy until the wagon was down halfway between 115th and 114th streets. Don't you recollect that you said that awhile ago to me? A. Yes. Q. If you didn't see the boy until the wagon was down there, how could you see the wagon run over the boy between 115th and 116th streets? A. It was the wagon that run over him. Q. You believe that? A. Yes. Q. But, you know seeing a thing and believing it are two different things; don't you know that? Did you see the wagon hit him? A. No; not until the child was lying in the gutter. Q. You didn't see the wagon at all? · A. No."

The answers to the last questions ought to be considered in connection with the form of the preceding questions put to this witness on cross-examination, and her answers thereto. She testified that she saw the horse strike the boy. The last question refers to the wagon hitting the boy, and this witness might well have regarded that question as relating to her seeing the wagon after the boy was hurt or struck, and she might have had that in mind when she made the answers seemingly contradictory of her positive assertions in other parts of her testimony.

This state of the record presents a question of credibility and of the weight of evidence. Where the whole case depends upon one witness, if the court can say that there is such an irreconcilable contradiction in the statements of that witness that they do not amount to proof at all, then it may be error to submit the case to the jury; for if there is a positive assertion of a fact, and a negation or retraction of that assertion made by the same witness on the same trial, it may be said there is no evidence of the fact,—that there is a failure of proof. But here it was for the jury to say what weight they would give to the testimony of this witness. We think the case should have been retained for the consideration of the jury, and that the ends of justice require that a new trial be ordered.

The judgment appealed from must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.